IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIYA STEPANOV,

              Petitioner,

      vs.

DEBORAH K. JOHNSON, Warden,
Central California Women's Facility,[1]

         Respondent.

No. 2:12-cv-02644-JKS

MEMORANDUM DECISION

Mariya Stepanov, a state prisoner represented by counsel, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Stepanov is in the custody of the

California Department of Corrections and incarcerated at Central California Women's Facility.

Respondent has answered, and Stepanov has replied.  Also pending before this Court is the

petition for habeas relief filed by Stepanov's co-defendant, Gennadiy Sevchuk, in *Sevchuk v.*

*Cate*, Case No. 2:12-cv-02857-JKS.  Stepanov's Petition raises many of the same issues raised in

Sevchuk's case.

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 3, 2006, Stepanov, along with co-defendants Sevchuk and Maksim Isayev, was

charged with the first-degree murder of Dmitriy Paskar.  The information alleged as a special

circumstance that the defendants intentionally killed Paskar while lying in wait.  It further

alleged that Isayev personally used and discharged a firearm and that Stepanov and Sevchuk

---

[1]     Deborah K. Johnson is substituted for W. Miller as Warden, Central California
Women's Facility.  FED. R. CIV. P. 25(d).

were vicariously armed with the shotgun in the commission of the murder.  On direct appeal of

Stepanov's conviction, the Court of Appeal recounted the following facts underlying the murder

charge:

> The events surrounding this murder began when the victim slept with defendant
> Stepanov and then bragged about it.  Stepanov was very upset and told defendant Isayev,
> her former boyfriend, what had happened. Isayev told his friend, defendant Sevchuk.
> Defendant Sevchuk bought ammunition for Isayev's shotgun and loaded the gun.
> Isayev, Sevchuk and others drove to the victim's home, intending to shoot the victim
> when he came out of his house.  However, when the victim made his appearance, he was
> accompanied by his girlfriend and the assault did not occur because defendants did not
> want any witnesses.
> Isayev called Stepanov to report this kink in the plans, and told her to call the
> victim to make arrangements to meet him late that night at a park.  Stepanov did so.
> When Isayev and Sevchuk drove up, Isayev saw the victim and Stepanov standing close
> to together; the victim reached for Stepanov and groped her.  Isayev got out of the car,
> retrieved his loaded shotgun from the trunk, and approached the victim, asking Stepanov
> if this was "the guy."  When Stepanov nodded, Isayev shot the victim twice and killed
> him.

*People v. Isayev*, No. C055417, 2011 WL 2848584, *1 (Cal. Ct. App. July 19, 2011).

The defendants pled not guilty to the charge and denied the allegations.  They were

jointly tried before separate juries.  At trial, Isayev admitted shooting the victim, but he asserted

that it was in the heat of passion or due to provocation and he was therefore guilty only of

voluntary manslaughter.  Stepanov claimed that she only wanted the victim to apologize and be

punished, and she never intended Isayev to kill Paskar.  Sevchuk asserted that, although he was

at the scene of the murder, he was drunk and uninvolved in any plan to kill the victim.  The

primary issues at trial were thus: 1) whether the murder was premeditated; and (2) whether

Stepanov and Sevchuk were liable as aiders and abettors for a murder that was the natural and

probable consequence of an intended assault.

Evidence was presented at trial regarding Isayev's reputation as a violent and jealous person.  It was also established that Stepanov and Sevchuk knew that Isayev had a gun and had previously been involved in shooting incidents arising from jealousy.  Witnesses described hearing Isayev brag about the murder and make statements such as "[W]henever I do anything, I do it 100 percent. I know what I'm doing."  He told one witness that he had aimed for the victim's head and killed him to stop him from raping girls.

Mikalai Yarmaliuk, the person who first drove the car to the victim's house, also testified for the prosecution.  Yarmaliuk described Sevchuk loading the shotgun, the plan to shoot the victim, the phone conversations between Isayev and Stepanov, and Isayev's past violent conduct. Yarmaliuk had suffered head injuries in an earlier accident, and the defendants challenged his memory, emphasizing the inconsistencies in his testimony and his general credibility.

On March 8, 2007, Stepanov's jury found her guilty of second-degree murder and found true the allegation that she was vicariously armed with a shotgun.[2]  The trial court subsequently sentenced her to 15 years to life imprisonment, enhanced by one year for being vicariously armed with the shotgun.[3]

Through counsel, Stepanov appealed her conviction, arguing that: 1) a juror committed misconduct that warranted reversal of her conviction; 2) the trial court erred in its handling of

---

[2]     Sevchuk's jury also found him guilty of second-degree murder and found true the allegation that he was vicariously armed with a shotgun.  Isayev's jury found him guilty of first-degree murder and found true the allegation that he personally used and discharged a shotgun as well as the special circumstance that he murdered Paskar while lying in wait.

[3]     Sevchuk was also sentenced to 15 years to life imprisonment, enhanced one year for being vicariously armed with a shotgun.  Isayev was sentenced to life imprisonment without the possibility of parole, enhanced 25 years to life for the personal use and discharge of the shotgun.

Yarmaliuk's medical records; 3) the trial court failed to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter; 4) the trial court erroneously gave a flight instruction; 5) there was insufficient evidence to corroborate Yarmaliuk's testimony that Stepanov asked Isayev to murder Paskar; and 6) there was insufficient to show that murder was a natural and probable consequence of any plan to assault Paskar.  Sevchuk and Isayev also appealed their convictions.  On July 19, 2011, the California Court of Appeal struck one fine levied against Isayev but otherwise affirmed the convictions in all respects in a reasoned, unpublished opinion.  *Isayev*, 2011 WL 2848584, at *26.  Stepanov petitioned for review in the California Supreme Court, raising the claims she unsuccessfully raised before the Court of Appeal and joining in the arguments asserted by Sevchuk and Isayev.  The Supreme Court summarily denied review with respect to all defendants on October 26, 2011.

Stepanov then filed in the state superior court a petition for a writ of habeas corpus.  In that petition, she argued that: 1) the trial court erred by failing to instruct the jury on unanimity; 2) the trial court improperly interfered with the cross-examination of Detective Joachim and when it refused to show a video that would have impeached Joachim's testimony; 3) the trial court erred by asking witnesses questions that were submitted by jurors; 4) the trial court was biased against defense counsel; and 5) trial counsel was ineffective for failing to earlier move to disqualify the trial court for judicial bias.  The superior court denied the petition in an unpublished, reasoned opinion issued on March 2, 2012.  Stepanov raised the same claims in a habeas petition filed in the state supreme court.  That court denied relief without comment on February 20, 2013.

While her petition to the state supreme court was pending, Stepanov timely filed a

counseled Petition for a Writ of Habeas Corpus to this Court on October 25, 2012.

## II. GROUNDS RAISED

In her counseled Petition before this Court, Stepanov argues that: 1) she was denied due

process and the right to confrontation when the trial court interfered with the cross-examination

of Detective Joachim and refused to allow the showing of a video that would have impeached

Joachim's testimony; 2) the trial court erred by allowing the witnesses to be asked questions

submitted by the jurors; 3) judicial bias against defense counsel warrants reversal of her

conviction; 4) she was denied a fair trial due to juror bias; 5) there was insufficient evidence to

corroborate Yarmaliuk's claim that Stepanov asked Isayev to kill Paskar; 6) the trial court erred

in its handling of Yarmaliuk's medical records; 7) she was entitled to a jury instruction on

manslaughter; 8) there was insufficient evidence to show that the murder was a natural and

probable consequence of any plan to assault Paskar; 9) the trial court erred by instructing the

jury that it could consider the natural and probable consequences theory; and 10) the trial court

denied Stepanov due process and a fair trial when it gave the flight instruction to the jury.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

## IV. DISCUSSION

A.      *Confrontation Violation* (Ground 1)

Stepanov first argues that the trial court improperly limited her cross-examination of

Detective Joachim when it did not allow the defense to present to the jury a video clip depicting

Joachim's interview with Stepanov.  Stepanov contends that the clip would have shown that

Joachim's direct testimony was perjured.  The superior court denied this claim in its reasoned

decision denying state habeas relief:

> [Stepanov] also claims that the trial court improperly limited cross-examination
> by excluding evidence that would have impeached a prosecution witness.  [Stepanov]
> states that a video would have contradicted Detective Joachim's testimony (apparently at
> the preliminary hearing) that he was not present when [Stepanov] was arrested.  The trial
> court found this to be irrelevant, apparently since it did not impeach any of Joachim's
> trial testimony.  In addition, the court stated that even if it had some minimal relevance,
> such relevance was grossly outweighed by undue consumption of time and confusion of
> the issues.  [Stepanov] argues that a five-minute video could not have resulted in undue
> consumption of time, but the court explained that it was also considering the questioning
> relating to the video.  Moreover, the proposed video included *Miranda* issues that were
> not relevant and would have confused the jury.  Since [Stepanov] has not shown that the
> trial court abused its discretion by excluding the evidence or that the exclusion resulted in
> a miscarriage of justice, it is not reasonably likely that raising the issue on appeal would
> have resulted in a more favorable result.

The Supreme Court has made clear that federal habeas power does not allow granting

relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence

code in ruling on the admissibility of evidence.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)

(citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154

(1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In this context, the Supreme

Court has defined the category of infractions that violate fundamental fairness very narrowly,

limiting them to specific guarantees enumerated in the Bill of Rights.  *Estelle*, 502 U.S. at 73

(citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

      The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him . . . ."  U.S. CONST. amend. VI.  It is well settled that, under the Sixth Amendment, an

accused has the right to present witnesses, testimony and other evidence in his defense.  *See*

*Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, "[t]he accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).  States have

considerable latitude under the Constitution to establish rules excluding evidence from criminal

trials.  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  "Thus, a trial judge may exclude or

limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the

issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the

rulings are not arbitrary or disproportionate."  *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th

Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due

process rights are not violated by exclusion of relevant evidence where probative value is

outweighed by danger of prejudice or confusion).

      After Stepanov filed her Petition in this case, the Supreme Court stated that it "has never

held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence

for impeachment purposes."  *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam)

(citations omitted); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation).  In this case, Stepanov sought to introduce the video to impeach Joachim's testimony, which is the type of evidence the Supreme Court held is not entitled to Confrontation Clause protection.  *Jackson*, 133 S. Ct. at 1994. Accordingly, it cannot be said that the state court's denial of Stepanov's claim was contrary to, or an unreasonable application of, clearly established federal law.

In her Petition, Stepanov argues for the first time that the trial court unfairly limited her cross-examination of Joachim by chiding and interrupting the questioning.  Recognizing that this claim is different than the one Stepanov raised before the state courts, Respondent argues that this portion of the claim is unexhausted and should be dismissed on that basis.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted her state court remedies, Stepanov must have presented both the legal arguments and the factual basis of her claim to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

In her Traverse, Stepanov contends that Respondent waived any contention that the claim is unexhausted by failing to file an affirmative motion to dismiss the claim and instead "relegat[ing] its affirmative defense of non-exhaustion for the first time to a footnote in its points and authorities, in support of its answer."  But a respondent must expressly waive the exhaustion

requirement for it not to apply, *see* 28 U.S.C. § 2254(b)(3), and it does not expressly waive the exhaustion requirement "by merely declining to affirmatively assert that they were unexhausted before answering the petition." *Libby v. Neven*, 580 F. App'x 560, 564 (9th Cir. 2014) (citing Rule 5(b) Governing Section 2254 Cases in the United States District Courts (requiring the state to identify unexhausted claims *in its answer*)).[4]  Moreover, even if the respondent overlooks a procedural bar or otherwise has not had the opportunity to waive reliance on it, a district court may rely on the bar to dismiss a claim.  *See Day v. McDonough*, 547 U.S. 198, 201-04 (2006) ("The federal court ha[s] the discretion to correct the State's error and, accordingly, to dismiss the petition.").

As the Supreme Court recognized in *Granberry v. Greer*, 481 U.S. 129, 134 (1987), "the exhaustion doctrine . . . 'is a principle [that] the federal courts . . . will interfere with the administration of justice in the state courts only "in rare cases where exceptional circumstances of peculiar urgency are shown to exist."'"  *Id.* (holding that federal court may raise exhaustion sua sponte when State inadvertently neglected to raise defense if interests of justice would be served) (citations omitted).  Otherwise, "federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."  *Id.* at 133.  Thus, because the state courts have not had the opportunity to consider this portion of Stepanov's

---

[4]        Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

claim, the Court must deny the remainder of the claim as unexhausted.[5]  Stepanov is thus not entitled to relief on her confrontation claim in any event.

B.      *Questioning by Jurors* (Ground 2)

Stepanov likewise contends that the trial court erred in unilaterally deciding that the jurors could submit questions for witnesses and in failing to properly limit the submitted questions.  She raised this claim to the state courts in her state petitions for habeas relief.  The superior court issued the last reasoned opinion, rejecting the claim after finding that the procedure used was permissible and no prejudice resulted.

---

[5]      Respondent further argues that the first three claims should be dismissed as procedurally barred because the state superior court, in the last reasoned decision, denied the claims with a citation to *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953), which indicates that the state court found those claims to be barred because they could have been, but were not, raised on direct appeal.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, but it has indicated that it is likely to do so with respect to the time period at issue here.  *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007) (finding claim procedurally barred based on *Dixon* bar); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*).  Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and prejudice or that a miscarriage of justice would result if the claim were not heard.  *See, e.g., Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

But given this unsettled nature and the fact that the claims may be more easily resolved on the merits, the Court declines to decide those claims on procedural grounds and instead reaches their merits, as discussed below.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (in the interest of judicial economy, the court may address a petition's merits without reaching procedural issues); *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001) (declining "to reach the complex questions lurking in the time bar of the AEDPA" where the district court "decided the case on the merits, and on the merits it was right as a matter of law").

Stepanov's claim fares no better on federal habeas review.  Initially, Stepanov references no United States Supreme Court case standing for the proposition that an accused's rights to due process rights or trial by impartial jury are placed in jeopardy when the trial court permits jurors to submit questions for the witnesses.  Thus, the state court's denial of this claim did not involve an unreasonable application of clearly established Supreme Court precedent.  *See Carey*, 549 U.S. at 77 (stating that, where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'"); *see also Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006).

But even under Ninth Circuit case law applicable on direct review, it is not reversible error for a trial court to permit jurors to submit questions for witnesses so long as the procedure for doing so was neutral and no prejudice resulted from any question asked.  *United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994); *see also Slaughter v. Parker*, 450 F.3d 224, 237 (6th Cir. 2006) (in § 2254 case suggesting that relief would not be warranted for juror questioning absent a showing of prejudice, and also observing that no Supreme Court precedent holds that juror questioning of witnesses violates the Sixth or Fourteenth Amendments).  Although Stepanov complains that the trial court "determined on its own whether . . . juror initiated questions could be asked, without input from counsel," Stepanov fails to show that the process was not neutral or that the trial court received input from the prosecution but not the defense.  Moreover, as the superior court reasonably determined:

> Although [Stepanov] claims that the trial court asked improper questions, she only states that the questions elicited improper opinion evidence.  The court later cautioned the jury against using this opinion evidence.  Moreover, [Stepanov] has not shown that she objected to these questions, despite the court's invitation to object to specific questions, nor that the inadmissible evidence resulted in a miscarriage of justice.

-12-

Accordingly, Stepanov is not entitled to relief on this claim.

C.      *Judicial Bias* (Ground 3)

Stepanov also avers that the trial court was biased against trial counsel.  According to Stepanov, "Repeatedly, and with palpable contempt during trial, the trial court criticized counsel, made patronizing statements, and interrupted her cross-examination, frequently belittling her in the process, all in front of the jury and thus denying [Stepanov's] right to due process and a fair trial."  The last reasoned decision address this claim was the superior court's denial of Stepanov's state habeas petition, which states in relevant part:

> [Stepanov] claims that the trial court's hostility towards trial counsel showed bias, resulting in a denial of her rights to a fair trial and to counsel.  She cites to People v. Fatone (1985) 165 Cal. App. 3d 1164 and selected portions of the trial transcript allegedly showing that none of the transcripts shows conduct similar to that in Fatone; instead, it primarily demonstrates the court performing its duty to control the introduction of evidence and limit evidence and argument to relevant matters.  [Stepanov] has not shown that the court's repeated admonishments to counsel to move past irrelevant questioning were improper.  Although the court may have made some critical statements, those statements were made outside the presence of the jury and therefore did not necessarily interfere with [Stepanov's] right to counsel.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.  *See In re Murchison*, 349 U.S. 133, 136 (1955).  Indeed, the Supreme Court has recognized that "the right to an impartial judge [is] among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'"  *Greenway v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)).  But a petitioner claiming judicial bias must overcome a "presumption of honesty and integrity" on the part of the judge.  *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Moreover, a claim of judicial bias based on improper conduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge's conduct was

improper; rather, the question is whether the state judge's conduct "rendered the trial so

fundamentally unfair as to violate federal due process under the United States Constitution."

*Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted).

Further, the Supreme Court has explained that a showing of bias cannot be based merely

upon the tenor of a judge's remarks in the courtroom:

> [J]udicial remarks during the course of a trial that are critical or disapproving of,
> or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or
> partiality challenge.  They may do so if they reveal an opinion that derives from an
> extrajudicial source; and they will do so if they reveal such a high degree of favoritism or
> antagonism as to make fair judgment impossible . . . .  Not establishing bias or partiality,
> however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that
> are within the bounds of what imperfect men and women . . . sometimes display.  A
> judge's ordinary efforts at courtroom administration—even a stern and short-tempered
> judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Here, there is no indication of actual bias, and a review of the record indicates that the

trial judge's comments toward defense counsel do not suggest a substantial likelihood of bias.

There is no indication that the judge's remarks originated from an extra-judicial source of bias;

rather, the comments were plainly responses to incidents that occurred during the trial.

"[O]pinions formed by the judge on the basis of facts introduced or events occurring in the

course of the current proceedings . . . do not constitute a basis for a bias or partiality motion

unless they display a deep-seated favoritism or antagonism that would make fair judgment

impossible."  *Id.* at 555; *see also United States v. Wilkerson*, 208 F.3d 794, 797 (9th Cir.2000).

Contrary to Stepanov's contention, the judge's comments did not reveal favoritism, or

antagonism toward the defense, but instead demonstrated, at most, mild frustration with

Stepanov's counsel.  Indeed, as the superior court reasonably found, the cited transcripts

"primarily demonstrate[] the court performing its duty to control the introduction of evidence and limit evidence and argument to relevant matters."  Considered in the context of the trial as a whole, the judge's comments were isolated and trivial, aimed primarily at the efficient administration of the courtroom, and had no impact on the fairness of the trial.  *Cf. Duckett*, 67 F.3d at 740-41 (holding that even where trial judge's conduct toward defense was "troubling" and in some instances reflected "frustration and hostility," habeas relief was not warranted because "when considered in the context of trial as a whole," the judge's actions were "not of sufficient gravity to warrant the conclusion that fundamental fairness has been denied").  Accordingly, Stepanov cannot prevail on her judicial bias claim.

D.      *Juror Bias* (Ground 4)

        Stepanov additionally alleges that her right to a fair trial was violated when a juror committed misconduct.  She raised this claim on direct appeal, which was considered and subsequently rejected:

        Defendant Stepanov contends that one of the jurors on her case committed misconduct by (1) intentionally failing to disclose that he knew defendant Isayev and (2) informing the other jurors during deliberations that Isayev had a violent background. Stepanov asserts that the court erred in denying her motion for [a] new trial based on these two instances of alleged misconduct.  There was no error.
        As voir dire began, the court informed the prospective jurors of the names of all three defendants (including Isayev) and later read a long list of potential witnesses (which did not include Isayev).  The court asked if anyone on the panel recognized any of these names; there was no response.
        During questioning, Juror No. 10 said that he was a security officer at Cordova High School, a high school with a high ratio of "Russians and Armenians and so forth." Stepanov's attorney asked Juror No. 10 about his contacts with Russian high school students and his ability to be impartial.
        After being convicted, Stepanov moved for a new trial based on juror misconduct. She asserted that Juror No. 10 told the jury that he knew Isayev and knew that Isayev had a violent background.  The court notified the jurors of defense counsel's request for personal contact information to investigate this claim and informed jurors of their right to appear at the hearing or complete a written declaration.

Juror No. 3 submitted a declaration stating, "In the beginning of deliberations the juror stated he 'knew' . . . Isayev.  I challenged his statement, asking if he 'knew' [Isayev] or 'knew of' him.  He explained that while acting as custodian at the school he had seen [Isayev].  The juror also explained that he had discussed his situation with the judge in private.  I concluded that he had been screened for bias.  The foreman and others stopped the discussion as we were here to discuss [Stepanov's] case."

Juror No. 6 submitted a declaration asserting, "One juror mentioned he was in security at a high school with many 'Russian' kids.  This was early in deliberation.  Very late in deliberation (to my recollection AFTER we had agreed on a verdict) he mentioned that he had known . . . Isayev and he was a violent student.  Neither incident had any apparent impact on the jury decision and certainly had no impact on my decision."

Juror No. 10 wrote in a declaration, "I did not say I knew . . . Isayev.  I said I think I've seen him before; and I won't discuss any rumors, et cetera, to the jury."

Some jurors appeared at the hearing and agreed to be interviewed by counsel. Others made themselves available to counsel at other times, and a few did not want to be interviewed.

In subsequent filings, Stepanov's counsel alleged that "as the jury was deliberating for more than four days and when deadlocked, Juror [No. 10] told them what he did[:] 'If you knew the file on . . . Isayev that I do, you would not be having this much trouble.'  Within about an hour the jury reached a verdict."

In opposing the new trial motion, the prosecutor noted that there was no evidence to support Stepanov's claim that the juror's comment was made after four days of deliberations when the jury was deadlocked; in fact, the declarations from Jurors No. 3 and 6 described otherwise, with one juror recalling a comment being made early in deliberations and one recalling a comment after the verdict had been reached.

The trial court rejected Stepanov's claim that Juror No. 10 willfully failed to disclose that he knew Isayev.  The court stated, "I have reviewed a partial transcript of the voir dire and the arguments of counsel in their briefs.  [¶]  Juror [No. 10] did not disclose in voir dire that he recognized the name of the co-defendant Isayev or that he knew of him in regard to his work as a security officer at Rancho Cordova High School.

"He did volunteer the information that there are a large number of Russian students at the high school, and he indicated he worked in a program through the Probation Department that deals with students at that high school.

"Defense counsel has asked follow-up questions as to whether Juror [No. 10] harbored any prejudice towards Russian students in general and to which he said there was both good and bad.

"It should be noted that defendant Isayev was not present during the Stepanov voir dire, and there's no indication that Juror [No. 10] knew Isayev by name, thus, there is no reason to think that he willfully failed to disclose that he knew Isayev.

"He volunteered the information that he knew Russian students, and counsel could have followed up if there was any suspicion that he knew any of the parties.  It's more reasonable to assume that at some point later in the trial, Juror [No. 10] recognized Mr. Isayev when he saw him.

-16-

"I don't find that any failure to disclose the fact that he recognized Isayev, whose jury he was not a part of, in and of itself, constituted misconduct."

Turning to the second basis for Stepanov's motion, the court determined that the statements of Juror No. 10 to the jury presented a prima facie case of misconduct.  The court noted that the declarations established a "consensus . . . that Juror [No. 10] briefly stated words to the effect that he knew of co-defendant Isayev, at the very least, and that he knew that he was violent."

However, the court concluded that this presumption of misconduct was rebutted, explaining, "There was strong uncontradicted evidence against defendant Stepanov from which the jury could infer that she knew of defendant Isayev's tendency to violence, particularly in the context of a jealous boyfriend.  [¶]  She knew that he carried a shotgun in his car.  [¶]  She told her co-worker and supervisor that her new boyfriend—referring to Mr. Isayev—had killed someone.

"There was testimony that when she was at Rancho Cordova Park with her new boyfriend, Max Bgatov, and some other people, that Isayev, who had been there a little bit earlier, left and then later drove by the park and did a drive-by shooting.  [¶]  The uncontradicted testimony was that Stepanov told her friends that the shooter was . . . Isayev."

Defendant Stepanov contends that the court erred in denying her motion for new trial based on juror misconduct.

We turn first to Stepanov's claim that Juror No. 10 intentionally failed to disclose that he knew Isayev.

"When misconduct involves the concealment of material information that may call into question the impartiality of the juror, we consider [an] actual bias test . . . . 'Although intentional concealment of material information by a potential juror may constitute implied bias justifying his or her disqualification or removal [citation], mere inadvertence or unintentional failures to disclose are not accorded the same effect.  "[T]he proper test to be applied to unintentional 'concealment' is whether the juror is sufficiently biased to constitute good cause for the court to find under [the relevant statutes] that he is unable to perform his duty."  [Citation.]  [¶]  Whether a failure to disclose is intentional or unintentional and whether a juror is biased in this regard are matters within the discretion of the trial court.  Except where bias is clearly apparent from the record, the trial judge is in the best position to assess the state of mind of a juror or potential juror on voir dire examination. [Citations.]'"

The trial court acted well within its discretion in concluding that Juror No. 10 did not intentionally withhold information during voir dire.  As the court explained, Isayev was not in the courtroom during the Stepanov jury voir dire and it was most likely not until sometime during trial that the juror saw Isayev and realized that he recognized him. Even if Juror No. 10 should have alerted the court once he recognized Isayev, there was no evidence that the failure to do so hid any actual bias.

The court also acted well within its discretion in concluding that Juror No. 10's statements to other jurors did not amount to misconduct necessitating a new trial.  There are several problems with [Stepanov's] claims to the contrary.

First, we note one important distinction between this case and those relied upon by defendant Stepanov. Unlike cases such as *People v. Nesler* (1997) 16 Cal. 4th 561, 583, Juror No. 10 did not repeatedly refer to out-of-court information concerning defendant; instead, Juror No. 10 made passing reference to information relating to a witness. Nothing in Juror No. 10's statement pertained directly to defendant Stepanov's guilt or innocence.

Second, defendant places unwarranted emphasis on Juror No. 3's report that Juror No. 10 said he had raised this issue with the trial court when in fact this situation apparently was not brought to the court's attention. No other declarations contained a similar allegation and it is less than certain whether Juror No. 10 made such a statement or whether Juror No. 3 misinterpreted something else that was said. What is certain is that this statement played no role in deliberations or in Juror No. 3's consideration of the case.

Finally, a presumption of prejudice is rebutted and the verdict will not be disturbed "if the entire record in the particular case, including the nature of the misconduct . . . and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no substantial likelihood that one or more jurors were actually biased against the defendant." The court's comments demonstrate that this standard was met. Abundant evidence was introduced at trial of Isayev's violent tendencies, and there was no substantial likelihood that any passing comment by Juror No. 10 caused any jury member, including Juror No. 10, to be biased against defendant Stepanov.

The trial court did not err in denying defendant Stepanov's motion for new trial.

*Isayev*, 2011 WL 2848584, at *22-25 (citations omitted).

The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir.1998). "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73 (1965); *see also Estrada v. Scribner,* 512 F.3d 1227, 1238 (9th Cir. 2008) ("The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." (citing *Jeffries v. Wood,* 114 F.3d 1484,

-18-

1490 (9th Cir. 1997) (en banc), *overruled on other grounds by Gonzalez v. Arizona,* 677 F.3d

383, 389 n.4 (9th Cir. 2012) (en banc))).

   Thus, the Ninth Circuit has "consistently recognized that the Sixth Amendment prohibits

jurors from introducing matters into the deliberations not present during the trial." *Fields v.*

*Brown*, 503 F.3d 755, 793 (9th Cir. 2007); *see Gibson v. Clanon*, 633 F.2d 851, 854 (9th Cir.

1980) (explaining that  a jury's consideration of extrinsic material is a constitutional violation).

There is a potential for prejudice when a juror "interjects into deliberations 'objective extrinsic

facts' regarding the accused because that juror becomes an unsworn witness who is not subject

to either confrontation or cross-examination." *Mancuso v. Olivarez*, 292 F.3d 939, 950 (9th Cir.

2002) (citation omitted).  No bright line exists for determining whether a petitioner has suffered

prejudice from juror misconduct; therefore, reviewing courts "place great weight on the nature of

the extraneous information that has been introduced into deliberations." *Id*. (citation omitted).

"The inquiry into a jury's consideration of extrinsic evidence does not end at whether

misconduct occurred; upon a finding of misconduct, a *rebuttable* presumption of prejudice

applies." *Tong Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012).

   The United States Supreme Court has "long held that the remedy for allegations of juror

partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v.*

*Phillips*, 455 U.S. 209, 215 (1982); *Remmer v. United States*, 347 U.S. 227, 228-29 (1954)

(remanding case to district court to "hold a hearing to determine whether the incident

complained of was harmful to the petitioner").  However, the United States Supreme Court does

not require the partiality hearing to be conducted in a specific manner.  *Smith*, 455 U.S. at 217-

18.  The Ninth Circuit has applied the *Smith* hearing requirement to a variety of situations and

concluded that "[a]s long the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness." *Hedlund v. Ryan*, 750 F.3d 793, 807 (9th Cir. 2014) (citing *Dyer*, 151 F.3d at 974-75).

Here, the record shows that, after defense counsel petitioned for the disclosure of the jurors' personal identification information, the court ruled that Stepanov had established a *prima facie* showing of good cause "so as to require a formal hearing on the petition." The court sent notices of the hearing to each of the 12 Stepanov jurors. At the hearing, the court stated that "most" of the jurors had completed and returned declarations, copies of which had been provided to counsel. The court determined that five jurors were present in court and agreed to be interviewed by counsel that day; one juror was not present and did not wish to be interviewed but had returned a responsive declaration; one juror was present but did not wish to be interviewed; one juror was not present but had returned a responsive declaration and agreed to be interviewed at another time; two jurors were not present but agreed to be identified and interviewed at another time; and two jurors were not present and did not wish to be interviewed. Roughly one month later, Stepanov filed a renewed motion for a new trial based on counsel's interviews with the jurors. The prosecutor opposed the motion, and the court heard final argument.

After summarizing the content of the declarations that had been filed with the court, as discussed in the Court of Appeal's summary above, the trial court "f[ou]nd that the bare statement by Juror Number Ten that he knew or knew of defendant Isayev and that Isayev was violent establishes a prima facie case of jury misconduct." The court also found, however, that

there was no "material conflict" between the information provided by juror no. 10 about Isavey's propensity for violence and the evidence adduced at trial on that issue, which it deemed to be "strong uncontradicted evidence" that Stepanov knew about that propensity, "particularly in the context of a jealous boyfriend."  The court therefore ultimately concluded that the presumption of prejudice from the misconduct had been rebutted.

The Court finds that the trial court's handling of the allegations of juror bias/misconduct and Stepanov's motion for a new trial were reasonable and in accordance with clearly established federal law.  The trial court's fact finding process was "objective and reasonably explored the issues presented [and, therefore,] the state trial judge's findings based on that investigation are entitled to a presumption of correctness."  *Hedlund*, 750 F.3d at 807.  Because Stepanov was given an opportunity to establish prejudice and the trial court's factual determinations were reasonable and supported by the record, the appellate court's decision to deny Stepanov's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of fact. Stepanov is therefore not entitled to relief on this ground.

E.      *Insufficient Corroboration* (Ground 5)

Stepanov next asserts that there was insufficient evidence corroborating Yarmaliuk's testimony that Stepanov asked Isayev to murder Paskar.  Although Stepanov argues that her state and federal rights to due process were violated by a lack of sufficient evidence corroborating the accomplice testimony of Yarmliuk, the essence of this claim is simply a repetition of her argument on direct appeal that there was insufficient evidence to satisfy the corroboration requirement set forth in California Penal Code § 1111.[6]  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (a petitioner cannot transform a state-law issue into a federal one by simply asserting a due process violation).

However, "state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."  *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) (per curiam); *accord Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000) ("As a state statutory rule, . . . [California Penal Code § 1111] is not required by the Constitution or federal law."). Thus, "because section 1111 is a state rule, habeas will lie for [Stepanov] only if the alleged violation of section 1111 denied [Stepanov's] due process right to fundamental fairness."  *Laboa*, 224 F.3d at 979; *see also Estelle*, 502 U.S. at 72-73 (state evidentiary rule infractions implicate due process only if the infraction violates fundamental fairness).  "A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a

---

[6]      That section requires that "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."  CAL. PENAL CODE § 1111.

state law entitlement." *Laboa*, 224 F.3d at 979 (*citing Hicks v. Oklahoma*, 447 U.S. 343, 346

(1980)).

In this case, there was no arbitrary denial of Stepanov's state law entitlement requiring

that accomplice testimony be corroborated.  As the Court of Appeal noted, the corroborative

evidence required by § 1111 "need not corroborate every fact to which the accomplice testified

or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime

in such a way as to satisfy a fact finder the accomplice is telling the truth." *People v. Williams*,

940 P.2d 710, 772 (Cal. 1997).  As the state appellate court further concluded, the corroborative

evidence was sufficient to connect Stepanov with the crimes:

> Defendants assert there was insufficient evidence to corroborate Yarmaliuk's
> testimony.  The record demonstrates otherwise.  For example, photographs of the
> victim's house and its location matched the description Yarmaliuk had given.  The
> victim's fiancée testified that when she and the victim came out of the house, she saw a
> white car parked across the street.  The occupants of this car shielded their faces and then
> drove away.  This testimony matched Yarmaliuk's testimony and statements to
> detectives. Phone records corroborated Yarmaliuk's descriptions of phone calls Isayev
> made from the car.  Yarmaliuk described Sevchuk loading bullet and pellet rounds into a
> shotgun, and forensic evidence established that the victim's wounds were caused by this
> type of ammunition.
> Defendants emphasize that there was no corroboration of Yarmaliuk's claim that
> Stepanov intended that the victim be killed rather than hurt but, as already noted, each
> element of an offense does not need to be corroborated.  There was ample evidence to
> connect Stepanov to the crime in such a manner as to satisfy the jury that Yarmaliuk was
> telling the truth.

*Isayev*, 2011 WL 2848584, at *8.

Accordingly, Stepanov cannot prevail on this claim.

F.      *Medical Records* (Ground 6)

Stepanov additionally contends that the trial court improperly excluded some of

Yarmaliuk's medical record evidence, which she argued would impeach Yarmaliuk's ability to

perceive and remember information.  According to Stepanov, this exclusion of evidence violated

her rights to confront witnesses and to a fair trial.  The Court of Appeal considered and rejected

this claim as follows:

> Witness Mikalai Yarmaliuk testified about defendants' involvement in the events leading up to the shooting of the victim.  Yarmaliuk had suffered a head injury some years earlier when his car collided with a train, and he had some memory loss as a result.  Defendant Stepanov sought to obtain Yarmaliuk's medical records, asserting that these documents "will reveal information pertinent to Yarmaliuk's memory and credibility."
>
> The trial court released the only two pages of the medical records that it found relevant.  One, a report dated September 5, 2003, described Yarmaliuk as having "short-term memory loss."  The other, from May 19, 2004, indicated that Yarmaliuk was being treated for a "traumatic brain injury [with] mild cognitive impairment," and other problems.
>
> The court ruled that defendants would be permitted to "fully cross-examine Mr. Yarmaliuk on those points" and counsel did so.
>
> On appeal, defendants ask this court to review the sealed records and determine if additional medical records of Yarmaliuk should have been disclosed.  The Attorney General has no objection to this review.  We have examined the sealed medical records and conclude that the trial court's ruling was correct.  There are no other relevant documents that should have been disclosed.
>
> In a related argument, defendants challenge the timing of the court's ruling, asserting that the court erred in waiting to review the medical records until midtrial, when Yarmaliuk began to testify.  Their argument is based on a belief that the records contained other information that should have been provided prior to trial to ensure adequate time to conduct additional investigation.  Defendants' claim falters on its predicate: there was no other information that should have been provided.  Our conclusion that the trial court gave counsel all of the relevant medical records obviates the need to discuss this matter further.

*Isayev*, 2011 WL 2848584, at *2.

Here, Stepanov wanted to present impeachment evidence challenging the testimony of

Yarmaliuk by attacking his ability to remember and understand information.  As previously

discussed with regards to claim 1, this is precisely the type of evidence the Supreme Court held

is not entitled to Confrontation Clause protection.  *Jackson*, 133 S. Ct. at 1994.  Accordingly, it

cannot be said that the state court's denial of Stepanov's claim was contrary to, or an unreasonable application of, clearly established federal law.

In her Traverse, Stepanov argues that *Jackson* does not doom her claim because the problem here is that the trial court violated her "right, both under the Due Process clause and under state law and by virtue of state precedent, to subpoena the medical records, and to review the medical records and to determine for herself whether she desired to present those records at trial." But although Stepanov cursorily refers to federal due process, the substance of her argument is that the records were discoverable under state law, and thus does not raise a federal due process claim. Stepanov cites no Supreme Court authority, and this Court is not aware of any, that mandates that a defendant in a state trial is entitled to subpoena medical records in circumstances such as these.

Moreover, the record indicates that both the trial court and the appellate court conducted *in camera* reviews and determined that the excluded information was not relevant. Stepanov's bare contention that a different outcome would have resulted if she had been able to examine the records herself is far too speculative to warrant relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper). Accordingly, Stepanov cannot prevail on this claim.

G.     *Erroneous Instructions* (Grounds 7-10)

Stepanov further argues that the trial court made a number of errors with respect to its charges to the jury. Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the

Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in

the Bill of Rights, the Due Process clause has limited operation." *Id*.   Where the defect is the

failure to give an instruction, the burden is even heavier because an omitted or incomplete

instruction is less likely to be prejudicial than an instruction that misstates the law.  *See*

*Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  In those cases, the inquiry is whether the trial

court's refusal to give the requested instruction "so infected the entire trial that the resulting

conviction violates due process."  *See id.* at 156-57; *Estelle*, 502 U.S. at 72.  Moreover, even if

the trial court's failure to give the instruction violated due process, habeas relief would still not

be available unless the error had a "substantial and injurious effect or influence in determining

the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519

U.S. 2, 5 (1996).

      1.     Lesser included instructions

     Stepanov first contends that the trial court erred in failing to instruct the jury on the lesser

included offense of manslaughter.  Stepanov argued on direct appeal that, because she had been

raped, her subsequent conduct was a result of heat of passion.  The Court of Appeal disagreed:

> Defendant Isayev argued that he shot the victim out of provocation and heat of
> passion, and the court therefore instructed his jury on voluntary manslaughter.
> Defendants Stepanov and Sevchuk assert "[t]here is no reason why [defendants'] jurors
> should not have been given the option of finding her guilty of voluntary manslaughter
> also."  But there is: there was no evidence that defendants Stepanov or Sevchuk aided
> and abetted Isayev out of provocation or heat of passion.  While Stepanov was angry with
> the victim and Sevchuk was drawn into a plan to extract revenge for the perceived
> damage caused to Stepanov's reputation, nothing occurred at the time of the shooting to
> constitute provocation or heat of passion for either of these defendants.  Isayev asserted
> that he acted out heat of passion when he saw the victim grope Stepanov, but neither
> Stepanov nor Sevchuk testified that they had the same reaction.  Thus, while Isayev was
> entitled to an instruction on voluntary manslaughter, there was no evidence that Stepanov
> or Sevchuk acted out of heat of passion or provocation.  Without this evidence, the court
> had no obligation to instruct the Stepanov and Sevchuk juries on voluntary manslaughter.
> Defendants' argument is essentially a reframing of their claim that there was
> insufficient evidence for the jury to conclude that murder was a natural and probable

consequence of an assault.  We have already rejected that claim and for the reasons stated, reject their claim here as well.

In a similar vein, defendants suggest that their juries should have been instructed on involuntary manslaughter because an assault or battery, or conspiracy to commit these crimes, can be a misdemeanor as well as a felony.  This argument is again predicated on a claim that defendants could not have foreseen that Isayev would be armed.  As noted, however, that predicate is faulty.  This is not a situation like *People v. Woods*, supra, 8 Cal.App.4th at page 1588 in which we held that "in determining aider and abettor liability for crimes of the perpetrator beyond the act originally contemplated, the jury must be permitted to consider uncharged, necessarily included offenses where the facts would support a determination that the greater crime was not a reasonably foreseeable consequence but the lesser offense was such a consequence."  (Italics and underlining added.)  Here, the murder was a natural and probable consequence of an assault.

In short, if defendants Stepanov and Sevchuk were guilty at all, they were guilty of murder.  There was no evidence to support a voluntary or involuntary manslaughter theory, and no basis for the trial court to instruct on these lesser included offenses.

Moreover, even if we were to assume otherwise, any error was harmless.  The evidence overwhelmingly established that defendants set up the confrontation between Isayev and the victim at the deserted park and that defendants Stepanov and Sevchuk knew of Isayev's past history and violent reactions when jealous.  There was no reasonable probability that the jury would have returned a more favorable verdict had the court included instructions on voluntary or involuntary manslaughter.

*Isayev*, 2011 WL 2848584, at *16-17.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases.  The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and

will not be considered in a federal habeas corpus proceeding.").  Accordingly, the decision of the California courts denying Stepanov relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*.

Nevertheless, the Ninth Circuit has recognized that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States Supreme Court precedent. *Solis*, 219 F.3d at 929.  Although Stepanov argues here that she argued at trial that she aided and abetted Isayev out of provocation or heat of passion resulting from Paskar's raping her, as the Court of Appeal reasonably concluded based on its review of the record, Stepanov's defense was that she wanted Isayev to assault Paskar and did not realize that he would kill him.  The evidence presented at trial simply did not support a defense that Stepanov aided and abetted out of provocation or heat of passion.  Because an instruction on the lesser included offenses was not consistent with her theory of the case and not supported by the evidence, no due process violation arose from the failure to instruct the jury on the lesser included offenses. *See Bradley v. Duncan*, 315 F.3d 1091, 1098-1101 (9th Cir. 2002) (finding federal due process violation where defendant's request for instruction on the only theory of defense was denied); *Solis*, 219 F.3d at 929.

In addition to the possibility of demonstrating a due process violation based on the failure to instruct on a theory of the defense, clearly established federal law provides that, in order to establish a violation of his federal due process rights by the failure to give a requested jury instruction, Stepanov must demonstrate that the instruction should have been given, and that its omission "so infected the entire trial that the resulting conviction violates due process."

*Henderson*, 431 U.S. at 154.  Here, Stepanov has not carried this heavy burden because, as the

Court of Appeal noted, "[t]he evidence overwhelmingly established that the defendants set up

the confrontation between Isavey and the victim at the deserted park and that defendants

Stepanov and Sevchuk knew of Isayev's past history and violent reactions when jealous."

*Isayev*, 2011 WL 2848584, at *17.  It is thus clear that the failure to instruct in this regard could

not have had any adverse effect whatsoever on the jury's decision, much less the "substantial and

injurious effect" required to show the error was harmful.[7]  *Brecht*, 507 U.S. at 637.  Accordingly,

Stepanov is not entitled to relief on this instructional error claim.

        2.        Natural and probable consequence instruction

In claim 8, Stepanov argues that there was "insufficient evidence to show that she knew

or reasonably should have known either what the principal was intending to do, or that she knew

the principal had a weapon that might have escalated a simple assaultive act to murder."  She

similarly contends in claim 9 that the jury should not have been able to consider the natural and

probable consequences theory of culpability because there was insufficient evidence to support

that charge.  The thrust of this instructional error claim is that there was insufficient evidence to

warrant a natural and probable consequences instruction, and thus insufficient evidence to

convict Stepanov of murder, because she could not have reasonably foreseen that Isayev would

---

       [7]        Other courts have admonished that harmless error review should not be confused
with the sufficiency of the evidence inquiry required under *Jackson*, 443 U.S. at 324.  *See, e.g.*,
*Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the
Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for
whether there was sufficient evidence at trial to support a verdict.").  The Court's reliance on the
overwhelming evidence against Sevchuk in finding that any error was harmless does not simply
focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the
improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the
overall strength of the prosecution's case.  *Id.* at *11.

shoot the victim.  Both Stepanov and Sevchuk raised this claim on direct appeal, which was

rejected as follows:

> Defendant Stepanov knew Isayev owned a shotgun, told others that Isayev had previously shot at one of her former boyfriends out of jealousy, that Isayev had previously killed someone.  Defendant Sevchuk also knew that Isayev could be violent when jealous. Sevchuk participated with Isayev in the Kutsenko shooting, loaded the shotgun on the night of the murder and actively participated in the plan to shoot the gun at the victim outside of the victim's house.  Sevchuk drove to the park with Isayev, asked if he needed assistance, and saw Isayev go to the trunk of the car, where Sevchuk knew Isayev kept his shotgun.  Given this evidence, the jury could conclude that even if defendants Sevchuk and Stepanov intended to abet only an assault, the murder of the victim was a reasonably foreseeable consequence of that act. Defendants' claims to the contrary are unavailing.

*Isayev*, 2011 WL 2848584, at *8.

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for

sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the

original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This

Court must therefore determine whether the California court unreasonably applied *Jackson*.  In

making this determination, this Court may not usurp the role of the finder of fact by considering

how it would have resolved any conflicts in the evidence, made the inferences, or considered the

evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the

prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam).  *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  *Id.* at 3-4.  Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because

-32-

the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In this case, determination of whether a crime is the natural and probable consequence of a target crime involves an objective, factual analysis.  *People v. Prettyman,* 926 P.2d 1013, 1039 (Cal. 1996).  As the Court of Appeal noted, the record contains evidence that "Stepanov knew Isayev owned a shotgun, told others that Isayev had previously shot at one of her former boyfriends out of jealousy, [and] that Isayev had previously killed someone."  *Isayev*, 2011 WL 2848584, at *8.  A jury could have reasonably concluded that, based on this knowledge, it was objectively foreseeable that Isayev would shoot Paskar.  Thus, the Court of Appeal's determination that "there was ample evidence that the murder was a natural and probable consequence of whatever assault was planned," *id.* at *12, was not unreasonable or contrary to federal law.  Stepanov is therefore not entitled to relief on this claim.

3. Flight instruction

Finally, Stepanov argues that the trial court erred in instructing the jury that it could infer consciousness of guilt if it concluded that she fled the scene of the murder.  The Court of Appeal considered and rejected this claim as follows:

> Defendant Stepanov contends the trial court erred in instructing the jury pursuant to CALCRIM No. 372, "Defendant's Flight."
> The court instructed: "If the defendant fled immediately after the crime was committed, that conduct may show that she was aware of her guilt.  If you conclude the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence of flight cannot prove guilt by itself."
> [Stepanov] asserts that this instruction was based solely on her leaving the scene of the shooting, an act that did not constitute fleeing or suggest consciousness of guilt. We do not agree.

-33-

"'A flight instruction is proper whenever evidence of the circumstances of [a] defendant's departure from the crime scene . . . logically permits an inference that [her] movement was motivated by guilty knowledge.'"  "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury could find the defendant fled and permissibly infer a consciousness of guilt from the evidence."  "[F]light requires neither the physical act of running nor the reaching of a far-away haven.  [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested."

Here, the evidence was sufficient to support giving CALCRIM No. 372.  Isayev testified that after shooting the victim, he told Stepanov to "get out of this park," and she ran toward his car; Sevchuk told her to go to her own car; she did so and drove away.  On the morning following the shooting, Stepanov told her manager that the person who had raped her had been murdered.  Stepanov finished her shift but did not come to work the next day and instead left a message that the police were harassing her about the murder and that "she was leaving town" on the advice of her attorney.  When Stepanov returned to work a few days later, she told her manager that she "hid out with some family members" at an unspecified location.

This evidence was sufficient to warrant giving a flight instruction.

But even if we were to conclude otherwise, the error was harmless.  The instruction on flight did not figure in closing arguments.  The prosecutor made only a brief reference to flight in his lengthy argument.  Defense counsel did not mention flight or the instruction at all.  CALCRIM No. 372 did not posit the existence of flight and instead left it to the jury to decide if there had been flight and if so, its significance.  There is no reasonable probability that the jury's verdict would have been any different had the flight instruction not be given.

*Isayev*, 2011 WL 2848584, at *9 (citations omitted).

Again, the conclusion of the California Court of Appeal that the flight instruction given to Stepanov's jury was correct under California law is binding on this court.  *See Bradshaw*, 546 U.S. at 76.  And with respect to Stepanov's federal due process claim, she has failed to demonstrate that the giving of the challenged jury instruction rendered her trial fundamentally unfair.  For the reasons set forth by the California Court of Appeal, the trial evidence was sufficient to support the giving of the jury instruction on flight.

Indeed, the Court is aware of no clearly established federal law that prohibits the giving of the flight instruction in the circumstances of Stepanov's case.  Rather, the Ninth Circuit has

-34-

repeatedly confirmed the constitutionality of similar flight instructions.  *See, e.g.*, *Karis v. Calderon*, 283 F.3d 1117, 1131-32 (9th Cir. 2002) (instructing the jury on flight, even though the trial court refused to advise the jury of possible reasons for flight other than consciousness of guilt, was not fundamentally unfair and did not violate due process); *Houston v. Roe*, 177 F.3d 901, 910 (9th Cir. 1999) (instructing the jury on flight was not unconstitutional because there is no clearly established federal law as determined by the Supreme Court that prohibits giving a flight instruction when the defendant admits committing the act charged).

Furthermore, as the Court of Appeal reasonably concluded in the alternative, Stepanov cannot show that there was a "substantial and injurious effect" from the flight instruction.  *See Brecht*, 507 U.S. at 637.  The Ninth Circuit has recognized that where, as here, the instruction is accompanied by the standard instructions concerning the burden of proof, circumstantial evidence, and the use of evidence, the instruction may benefit defendants because it reminds jurors that evidence of flight is not, by itself, sufficient to support a finding of guilt, and requires an inference of consciousness of guilt only if flight is proven.  *Karis*, 283 F.3d at 1132; *Harrison*, 585 F.3d at 1160; *see also Francis v. Franklin*, 471 U.S. 307, 314 (1985) (finding that a jury instruction is not unconstitutional if it allows a permissive rather than mandatory inference from a jury based on certain predicate information).

Considering the flight instruction in the context of the evidence introduced at trial and the instructions as a whole, the instruction did not render Stepanov's trial fundamentally unfair.  Accordingly, the California courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and Stepanov is not entitled to relief.

## V. CONCLUSION AND ORDER

Stepanov is not entitled to relief on any ground raised in her Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 8, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge